WESLING and another, Respondents, vs. KROLL and another, Appellants.

*January 16 — February 3, 1891.*

MINES AND MINING. *(1–3) Forfeiture of lease by cessation of work: Waiver: Burden of proof: Evidence. (4, 5) Surrender of lease: Instructions to jury: Evidence.*

1. A mining lease provided for a forfeiture of the rights of the lessees if they failed to work for three weeks. Work was discontinued for more than a year and then resumed. In an action of trespass by the lessees against agents of the lessor who had interfered with their possession, it is *held,* upon the evidence, that the question whether the lessor had consented to the cessation of work and had waived the forfeiture was one for the jury.

2. The burden of showing such consent and waiver was upon the lessees.

3. The question being whether the lessees were lawfully in possession or had forfeited their rights by discontinuing work, the admission of evidence that they had made a valuable discovery upon the land is *held* not to have been an error prejudicial to the defendants.

4. The failure to instruct the jury upon the law applicable to the theory (upon which the case was partly tried by the defendants) that the lessees had surrendered their rights under the lease, was not error, no such defense being set up in the answer, no instructions on that

subject having been asked, and the evidence not being such as would have warranted the jury in finding that there had been such a surrender.

5. Evidence that one of the lessees had declared that he would not work any longer in one particular shaft, and that a copy of the lease had been destroyed with the consent of some, but not all, of the lessees, is *held* not to show a surrender of the premises.

APPEAL from the Circuit Court for *Iowa* County.

Action of trepass brought by *Bernard Wesling* and *John Geltner* against *John Kroll* and *Frank Kroll*. The facts will sufficiently appear from the opinion. The defendants appeal from a judgment in favor of the plaintiffs.

For the appellants there was a brief by *John F. Grace*, and oral argument by *J. M. Olin*.

*J. P. Smelker*, for the respondents.

Cole, C. J. If the plaintiffs were in the lawful possession of the mineral lot, as alleged in the complaint, the defendants had no right to wrongfully interfere with their possession and throw their windlass and mining tools off of the premises. The defendants justify their acts upon the ground that they entered upon the premises by the direction of the owner, Anton Kroll, and by his express orders removed the windlass from the same.

It appears that in October, 1886, Anton Kroll gave the plaintiffs and his son *John* a written lease or permission to mine upon a piece of land which he then owned, upon condition that they pay a seventh of all ores raised by them as rent. Anton Kroll was a party to this agreement as one of the lessees, or one of the mining company which had the privilege of working the lot for mining purposes, and he was likewise the owner of the land itself. The lessees were required to regularly prosecute their mining, and if they failed to work for three weeks they forfeited their rights under the contract. The mining company commenced their operations under this agreement in October, 1886, and con-

tinued their work until the following spring, when they stopped work on account of water in their shaft. It may be observed here in this connection that, while the agreement speaks of a "mining shaft," and of a forfeiture of all rights in "said shaft" by the failure to work for three weeks, still the instrument undoubtedly conveys the right to mine anywhere upon the particular piece described, and did not restrict the privilege to mining on the shaft alone, which would be a right of little value; but the privilege extended to the entire piece of ground, of about 500 feet square. It is claimed on the part of the plaintiffs that work was stopped in the spring of 1887, with the consent of the landlord, who, as we have said, was one of the mining company. The lessees did not go to work again on the ground until November, 1887, and then only worked for a short time. It is not very clearly shown that either *Geltner* or *John Kroll* ever again worked on the land as partners of the plaintiff *Wesling*, but we fully agree with the learned circuit judge in the view that the testimony fails to show that there was any forfeiture under the lease prior to November, 1887. Nor does it appear that the landlord objected to the land being worked by the lessees at that time.

In his charge the circuit judge correctly says that "from November, 1887, to January, 1889, no work was done upon the lot by any of the parties to the lease, but it is claimed that notwithstanding a delay of thirteen or fourteen months, during which period no work whatever was done on the land, still the rights of the plaintiffs under the lease were preserved by reason of the fact that the landlord consented to the cessation of all mining operations during that time." There is considerable evidence in the case tending to prove that the landlord did consent to this delay, and expressly declared to some of the parties that their rights in the diggings would continue, though they did not work the land as prescribed in the lease. Of course the landlord

might consent to that delay in working, and waive the forfeiture, if he saw fit; but, being one of the mining company himself, good faith and fair dealing would require him to distinctly notify his partners that he would insist upon the forfeiture if they failed to work according to the lease. Now, the question whether the landlord, Kroll, consented to the cessation of the work and that the lessees might retain their rights of mining, was clearly one of fact for the jury upon the evidence. As we have said, there was certainly much testimony to carry the question to the jury on that point; and, under the charge of the court, the jury must have found in favor of the plaintiffs upon that issue. This finding is conclusive upon that fact, and it is not open for further discussion.

But it is claimed on the part of the defendants that improper evidence was admitted, against their objections, that a new and valuable discovery had been made upon the lot. It is said the admission of this testimony was error, and that it was calculated to prejudice the defendants. The real issue in the case was whether the plaintiffs were lawfully in possession of the diggings when the alleged trespass was committed. Testimony showing that they had made a valuable discovery upon the lot was certainly pertinent, for, if they had, the right to mine upon the range and follow it became irrevocable under the statute, so long as they paid the rent and did not incur a forfeiture. Upon the issues, this class of testimony was not very important nor material, but its admission could not possibly injure the defendants. The vital question in the case was whether the plaintiffs had forfeited their rights in the digging by discontinuing work for more than three weeks without the consent of the landlord, and upon that question the court charged that the burden of proof was upon the plaintiffs to establish the fact that Anton Kroll consented that they might cease to work on the tract for thirteen or fourteen

months, and still retain their privilege under the lease. We cannot see any objection to the charge, and consider it sound, as a proposition of law. The jury must have been satisfied from the testimony that Anton Kroll did consent to the work being stopped on the land for the period shown, and this disposes of that question also.

There surely was no error in overruling the motion to set aside the verdict and grant a new trial on the ground that the verdict was not supported by the evidence. We shall assume, for the purposes of the case, that the motion raises this question, though it is by no means clear that it does. Still, we think the court was right in denying the motion on the merits.

We do not think there is any error in the charge of the court of which the defendants can complain. It is as favorable to them as the law and testimony would warrant. But it is said the court erred in not instructing the jury as to the law applicable to the case on the theory on which the cause was tried on the part of the defendants, namely, whether the plaintiffs had not surrendered and given up all rights and privileges granted in the written lease. No such defense is set up in the answer, and really there is no evidence to sustain it, if it had been set up. No request was made for the court to charge as to such a defense. On the argument here some items of evidence were relied on to show that the premises were surrendered by the plaintiffs. It appears that *Wesling*, in November, 1887, quit work because there was so much water in the shaft, and declared he would not work in that mud or hole any longer. But this does not prove his abandonment of his right under the lease. He had the right to work elsewhere on the lot; and he says his intention was to start a new shaft, which he might do. Some stress is laid on the circumstance that a copy of the lease which *Geltner* held was destroyed; it is said, with his consent. The circumstances about the de-

struction of that copy of the lease are fully detailed in the evidence. The lease was burned by Anton Kroll, who says it was done with *Geltner's* consent; but this *Geltner* denies. Even if he did consent to its destruction, this would not necessarily prove a surrender of the premises. *Wesling* did not consent to the destruction, if *John Kroll* did. It also plainly appears that at the time the lease was destroyed Anton Kroll knew that *Wesling* wanted to commence work on the diggings, and Kroll impliedly recognized that *Wesling* and the other parties still had rights to mine upon the ground. He did not pretend that there had been a forfeiture or surrender. Upon the evidence the jury would not have been warranted in finding that the premises had been surrendered or abandoned by the lessees, even if that question had been submitted.

These observations dispose of the material points of the case. We think the judgment of the circuit court is right, and must be affirmed.

